UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMULE NYAMBI,<br>                Plaintiff,<br><br>   v.<br><br>DELTA AIRLINES, INC., a foreign corporation,<br>                Defendant. | CASE NO. 2:21-cv-00369-JHC<br><br>ORDER RE: MOTION FOR SUMMARY JUDGMENT |

# I.

## INTRODUCTION

This matter comes before the Court on Defendant Delta Airlines, Inc.'s motion for summary judgment. Dkt. # 20. Plaintiff Amule Nyambi opposes the motion. Dkt. # 24. The Court has considered the materials filed in support of, and in opposition to, the motion, and the file herein. Being fully advised, the Court GRANTS the motion.

# II.

## BACKGROUND

Amule Nyambi worked for Delta at the Seattle-Tacoma International Airport from 2011 to 2017 as a customer service agent and, later, as an "Agent in Charge." Declaration of Gary Gunnell (Gunnell Decl.) at ¶¶ 1, 3; Declaration of Shapero (Shapero Decl.), Ex. A at 31. In

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 1

November 2016, Nyambi complained to his supervisor that a coworker, Aleks Ivanekov, accused him of treating another coworker unfairly. Declaration of Shane Bogni (Bogni Decl.), Ex. A. In December 2016, a supervisor counseled Nyambi and a coworker, Mohamed,[1] after the two yelled at each other at work. *Id.* And in January 2017, a supervisor counseled Nyambi and a coworker, Eric Shields, after they yelled each other at work; Nyambi alleged that Shields called him a "stupid African." *Id.* Nyambi testified in his deposition that both Ivanekov and Mohamed threatened him and tried to physically fight him. Shapero Decl., Ex. A at 193, 207.

In early February 2017, Nyambi's coworker Carolyn Carter told Delta supervisors that Nyambi was sharing sexually explicit videos of a coworker in the workplace and that he threatened her with voodoo and said that he would make her "life a living hell if [he] found out [she was] the one who told them what [he was] doing." Bogni Decl., Ex. C. She said in a written statement that Nyambi's threat left her feeling "VERY uncomfortable" and "somewhat scared" because she does not know "what this man is capable of doing." *Id.*

On February 8, 2017, Nyambi wrote to Delta supervisors, Samantha Vergara, Shane Bogni, and Georgianna Murphy, stating that he was stepping down from his role as Agent in Charge due to a hostile work environment. Bogni Decl., Ex. A, B. Supervisors asked Nyambi what he meant by a hostile work environment and Nyambi referred to the incident involving Shields. Bogni Decl., Ex. A. The supervisors asked Nyambi for a written statement about the incident and he refused, saying that he had put the incident behind him. *Id.*

Delta investigated Carter's allegations. Gunnell Decl. at ¶ 9. Delta interviewed employees identified as having knowledge of those allegations. *Id.* In a written statement, James Davis reported that while he was at work, Nyambi asked if he knew a female coworker

---

[1] The record does not appear to include Mohamed's full name.

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 2

who had walked past them. Gunnell Decl., Ex. D. When Davis said yes, Nyambi said that she was his "ex-lover" and called her "a whore." *Id.* Davis said that Nyambi then opened an application on his phone called "CALCULATOR" and showed Davis sexually explicit photographs of the woman. *Id.* Davis also said that Nyambi forwarded him a sexually explicit video on Facebook, which did not show any Delta coworkers. *Id.*

Delta interviewed the female coworker identified as being in the photographs Davis saw, and she provided Delta with a written statement. Gunnell Decl., Ex. E. The statement says that when they were together, Nyambi took photographs and videos of their sexual acts without her consent and that she heard from others, such as her friend Mercedes Tramble-Williams, that Nyambi was showing the photographs and videos to others at work without her consent. Gunnell *Id.* The statement also mentions that Nyambi often spoke about voodoo. *Id.*

Delta interviewed Tramble-Williams, who reported that she heard from coworker Jordan Clements that he saw sexually explicit videos of her friend and of another female coworker. Gunnell Decl., Ex. F. She said she did not know Nyambi and that she told the two women that their sexually explicit content had been shared at work. *Id.* She said that same day she received an angry call from Nyambi during which he yelled at her, told her she would lose her job, and questioned her on who told her about the video. *Id.* After the call, she spoke with Clements, who told her that Nyambi told him that Nyambi knew Tramble-Williams and he knew voodoo, which Tramble-Williams interpreted as an attempt to scare her. *Id.*

Delta also interviewed Clements. Gunnell Decl., Ex. G. Clements said that Nyambi confronted him about telling supervisors about the sexually explicit content, threatened him with voodoo, and told him that he and his family would become homeless again. *Id.* Clements said, as a result, he blocked Nyambi's number and avoided him in the workplace. *Id.* Tramble-Williams said that Clements told her that he had seen a sexually explicit video; but during his

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 3

phone interview with Delta supervisors Clements denied having seen any photographs or videos. *Id.*

Finally, Delta interviewed Nyambi. Gunnell Decl., Ex. I. Nyambi denied showing sexually explicit photographs or videos of Delta employees in the workplace. *Id.* He stated that he had a conversation with Carter about voodoo but denied making any threats against her. *Id.*

Based on its investigation, Delta determined that Nyambi had violated Delta's workplace policies. Bogni Decl., Ex. D; Gunnell Decl., Ex. J, K. Delta terminated Nyambi's employment on April 21, 2017. Declaration of Shapero (Shapero Decl.), Ex. A at 137.

Nyambi sued Delta, bringing claims under Title VII and the Washington Law Against Discrimination (WLAD) for discriminatory termination based on race and national origin and a claim for wrongful termination in violation of public policy. Dkt. # 1. Delta moves for summary judgment. Dkt. # 20.

### III.

#### ANALYSIS

A.   Summary Judgment Standard

Summary judgment is proper only if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 4

reasonable persons could disagree about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). "Uncorroborated allegations and 'self-serving testimony' will not create a genuine issue of material fact." *Heko Servs., Inc. v. ChemTrack Alaska, Inc.*, 418 F. Supp. 3d 656, 660 (W.D. Wash. 2019) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that they are entitled to prevail as a matter of law. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its burden, then the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of [their] case that [they] must prove at trial." *Galen*, 477 F.3d at 658. The Court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). Courts should "emphasize[] the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). This means an employee need produce "very little evidence" to survive summary judgment. *Schnidrig*, 80 F.3d at 1410 (quoting *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994)).

B. Title VII and WLAD Discriminatory Termination Claims

Title VII[2] and WLAD[3] protect an employee against discriminatory termination based on race or national origin.

  1. Title VII

In order to establish a disparate treatment claim under Title VII, a plaintiff must offer (1) direct or circumstantial evidence of discriminatory intent, or (2) indirect evidence of discrimination within the *McDonnell Douglas*[4] framework. *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1228 (9th Cir. 2021). Because Plaintiff does not offer direct or circumstantial evidence of discriminatory intent, the Court proceeds under the *McDonnell Douglas* framework.

"The *McDonnell Douglas* framework contains three, burden-shifting steps." *Id.*

> At the first step, the plaintiff must make a prima facie case of discrimination, which requires a showing that "(1) [they are] a member of a protected class; (2) [they are] qualified for [their] position [and doing satisfactory work]; (3) [they] experienced an adverse employment action; and (4) similarly situated individuals outside [their] protected class were treated more favorably."

*Id.* (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004)); *Norman v. Eastfield Min Quong, Inc.*, 152 F.3d 928 (9th Cir. 1998). If a plaintiff establishes a prima facie case, then at the second step, the burden shifts to the defendant "to show a legitimate, nondiscriminatory reason for the challenged actions." *Freyd*, 990 F.3d at 1228. At the third step, if the defendant provides such a reason, the burden shifts back to the plaintiff to show that the "proffered nondiscriminatory reason is pretextual." *Id.*

Because Plaintiff does not present a genuine issue of material fact regarding an element needed to establish a prima facie case of discrimination, summary judgment on the Title VII

---

[2] Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
[3] Chapter 49.60 Rev. Code Wash.
[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 6

claim is appropriate. Defendant does not dispute that Plaintiff is a member of a protected class and that he was subject to an adverse employment outcome—termination. Defendant contends that Plaintiff cannot establish a genuine issue of material fact as to whether Defendant treated similarly situated individuals outside his class more favorably. Plaintiff disagrees. The Court concludes there is no genuine issue of material fact as to this element.

Plaintiff contends that Defendant treated him less favorably because, when he complained about harassment by his coworkers Shields, Ivanekov, and Mohamed, Delta supervisors did not investigate his complaints; but when other coworkers complained about Plaintiff, Delta supervisors did investigate and take action.[5] But Plaintiff fails to connect this alleged less favorable treatment to his termination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) ("Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" (quoting *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993))). In other words, Plaintiff fails to compare his alleged conduct and termination with a situation involving employees outside his protected class engaging in similar conduct without being discharged.[6] *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156–57 (9th Cir. 2010) (assessing whether the plaintiffs were treated less favorably than similarly situated employees outside of the plaintiffs' protected class by comparing the fact that other employees who "engaged in lewd and inappropriate conduct" were not disciplined or terminated like the plaintiffs); *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (assessing

---

[5] Defendant emphasizes that, because certain of Plaintiff's former coworkers are Black, they are not "similarly situated individuals outside [Plaintiff's] class." *See Freyd*, 990 F.3d at 1228; Shapero Decl., Ex. A at 86–87 (identifying Shields as Black), 101 (Carter and Davis are Black), 104 (Tramble-Williams is Black), 110 (Clements is Black). While this may be true as to race, there is no evidence in the record that the coworkers were of the same national origin as Plaintiff. Thus, the Court does not rely on this point in this analysis.

[6] During Plaintiff's deposition, he testified that he was unaware of another Delta employee being accused by coworkers of sharing sexually explicit photographs or videos, or of threatening other employees or their families. Shapero Decl., Ex. A at 95–98.

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 7

whether the plaintiff was treated less favorably by comparing the fact that male employees who failed training were given another training opportunity instead of being removed from the program like the plaintiff); *see also Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1317–18 (11th Cir. 2003) (assessing whether a plaintiff was treated less favorably when plaintiff was fired based on her record of misconduct while a White coworker was not fired based on her record of misconduct).  Even given the "high standard for the granting of summary judgment in employment discrimination cases," Plaintiff has failed to present a genuine issue of material fact as to an essential element of his Title VII discriminatory termination claim.  *See Schnidrig*, 80 F.3d at 1410.

  2. WLAD

"Where an employee lacks direct evidence of discrimination, a WLAD claim proceeds under the three-step *McDonnell Douglas* analysis."  *Espinoza v. City of Seattle*, 458 F. Supp. 3d 1254, 1284 (W.D. Wash. 2020), *appeal dismissed*, No. 20-35506, 2020 WL 7062684 (9th Cir. Sept. 15, 2020); *see also Hines v. Todd Pac. Shipyards Corp.*, 127 Wash. App. 356, 370, 112 P.3d 522 (2005) ("Washington courts have adopted the *McDonnell Douglas/Burdine* three-part burden allocation framework for disparate treatment cases.").

> To establish a prima facie case of discrimination by disparate treatment, a plaintiff must show that (1) he belongs to a protected class, (2) he was treated less favorably in the terms or conditions of his employment (3) than a similarly situated, nonprotected employee, and (4) he and the nonprotected employee were doing substantially the same work; if the employer then proffers a legitimate, nondiscriminatory reason for its action, then (5) the plaintiff must produce evidence indicating that the employer's reason is pretextual.

*Billings v. Town of Steilacoom*, 2 Wash. App. 2d 1, 24, 408 P.3d 1123 (2017).

Because the WLAD claim undergoes a substantially similar analysis as the Title VII analysis above, the Court concludes that Plaintiff did not raise a genuine issue of material fact concerning whether he was treated less favorably than a similarly situated employee.  *See*

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 8

*Johnson v. Dep't of Soc. & Health Servs.*, 80 Wash. App. 212, 228, 907 P.2d 1223 (1996) (assessing whether similarly situated employees outside the protected class at issue were treated more favorably by considering whether a less severe discipline was imposed on a comparator for the same kind of alleged misconduct for which the plaintiff was disciplined).

C.     Claim for Wrongful Discharge in Violation of Public Policy

The Washington common law tort of wrongful discharge in violation of public policy serves as a "narrow exception to the at-will doctrine." *Martin v. Gonzaga Univ.*, 191 Wash. 2d 712, 722–23, 425 P.3d 837 (2018). A plaintiff can establish a claim of wrongful discharge in violation of public policy if they fall into one of four categories:

> "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing."

*Id.* at 723 (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wash. 2d 931, 936, 913 P.2d 377 (1996)). A plaintiff who does not fall into one of those categories can still establish a wrongful discharge in violation of public policy claim through the "Perritt test"[7]:

> "(1) The plaintiffs must prove the existence of a clear public policy (the clarity element). (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element). (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element). (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element)."

*Id.* (quoting *Gardner*, 128 Wash. 2d at 941).

---

[7] *Martin*, 191 Wash. 2d at 723 (citing Henry H. Perritt Jr., Workplace Torts: Rights and Liabilities (1991)).

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 9

Plaintiff contends that his claim meets the Perritt test.[8] He says that (1) Title VII and WLAD provide a public policy against discrimination, (2) by failing to thoroughly investigate his complaints about a hostile work environment, Defendant jeopardized the public policy, and (3) that Defendant's failures caused his termination. *See* Franklin Decl., Ex. D (complaints to supervisors). Defendant responds that it did try to investigate Plaintiff's complaint about Shields after Plaintiff used the term "hostile work environment" for the first time in his February 2017 email and that Plaintiff did not cooperate with the investigation. *See* Bogni Decl., Ex. B (email), A (no cooperation). Plaintiff points out that there were also incidents with Ivanekov and Mohamed, which he reported to Delta supervisors to no avail. Defendant does not provide evidence that it investigated Plaintiff's prior complaints about Ivanekov and Mohamed. But viewing the evidence in the light most favorable to Plaintiff, he has not shown a genuine issue of material fact as to whether Defendant's failure to investigate, even if it happened, caused his termination. He offers no evidence of such causation.

D.  Hostile work environment

A plaintiff seeking to establish a hostile work environment claim under Title VII[9] must show: "(1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

---

[8] Defendant interprets Plaintiff's argument as saying he falls into the fourth category regarding retaliation because in 2015, he filled out an intake form with the Washington State Human Resources Commission alleging that Defendant was falsely accusing him of misconduct. Nyambi Decl., Ex. J (it is unclear what accusation of misconduct Plaintiff's intake form related to). While Plaintiff suggests in his complaint that Defendant retaliated against him for filing such a complaint, his response brief does not make such an argument. Thus, the Court addresses only the argument before it. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (courts "review only issues which are argued specifically and distinctly in a party's opening brief." (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994))).

[9] While Plaintiff does not identify the legal basis for his hostile work environment claim in his complaint, his brief in opposition to Defendant's motion for summary judgment refers only to a Title VII hostile work environment claim.

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 10

conditions of the plaintiff's employment and create an abusive work environment." *Vasquez*, 349 F.3d at 642.

> To determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Id.* (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71, *reh'g denied*, 533 U.S. 912 (2001)). "The required level of severity or seriousness 'varies inversely with the pervasiveness or frequency of the conduct.'" *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)).

Citing *Kwesele v. King County*, Defendant argues that Plaintiff failed to plead a hostile work environment claim in his complaint, thus precluding the Court's review of the claim. No. 2:17-CV-1426-RAJ, 2019 WL 1922928, at *1–2 (W.D. Wash. Apr. 30, 2019) (holding that pleading a Section 1981 claim regarding discrimination or retaliation does not amount to pleading a hostile work environment claim and refusing to consider an unpleaded hostile work environment claim). In Plaintiff's complaint, he lists these three claims: a disparate treatment claim under Title VII, a disparate treatment claim under WLAD, and a wrongful discharge claim. Dkt. # 1. But in his statement of facts, he alleges that he was subjected to a "hostile work environment due to his race and national origin." Dkt. # 1. In *Atkins v. Commercial Office Interiors*, in ruling on the defendant's summary judgment motion, the court considered a hostile work environment claim that the plaintiff asserted on the civil cover sheet, despite the plaintiff's complaint apparently asserting only a Title VII discriminatory treatment claim. No. C06-1594-JCC, 2007 WL 4561091, at *3 (W.D. Wash. Dec. 20, 2007).

Assuming Plaintiff pleaded a hostile work environment claim, he fails to raise a genuine issue of material fact as to whether verbal or physical conduct of a discriminatory nature was

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 11

sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment.

Plaintiff says that he was subjected to a hostile environment because Shields yelled at him and called him a "stupid African" and because of incidents in which Ivanekov and Mohamed threatened and tried to physically fight him. *See* Shapero Decl., Ex. A at 193, 207. He says these incidents culminated in him resigning from the Agent in Charge position. Bogni Decl., Ex. B. Defendant responds that, according to Plaintiff's own deposition testimony, Shields was the only person to treat Plaintiff less favorably based on his race or national origin and that the negative treatment by Shields was limited to one yelling match. *See* Shapero Decl., Ex. A at 118–19, 193. Defendant argues that the one incident alone cannot be the basis for a hostile work environment claim.

Viewing the evidence in the light most favorable to Plaintiff, he fails to show that conduct of a racial nature was sufficiently severe or pervasive to sustain his claim. Plaintiff identifies only one instance of conduct based on his race or national origin—when Shields allegedly called him a "stupid African." Indeed, Plaintiff testified during his deposition that Shields was the only Delta employee to subject him to racially disparaging comments or to treat him less favorably based on race or national origin. Shapero Decl., Ex. A at 118–19. If one incident suffices for a hostile work environment claim, it must be "extremely serious." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see Atkins*, 2007 WL 4561091, at *7 ("[i]f a single incident can ever suffice . . . the incident must be extremely severe." (quoting *Brooks v. City of San Mateo,* 229 F.3d 917, 926 (9th Cir.2000))). In *Magdaluyo v. MGM Grand Hotel, LLC*, the court affirmed summary judgment in favor of the defendant where the plaintiff asserted a hostile work environment claim based on an incident where the plaintiff's "direct floor supervisor told him

that he 'hates Filipinos' and that he hopes the United States will 'invade the Philippines.'" 757 F. App'x 599, 600 (9th Cir. 2019) (concluding "those remarks plus unsupported suspicions are not enough to create a genuine issue of fact requiring a trial to resolve."); *see also Nixon v. Franciscan Health Sys.*, No. C11-5076BHS, 2012 WL 834261, at *4 (W.D. Wash. Mar. 12, 2012), *on reconsideration in part*, No. C11-5076BHS, 2012 WL 1068070 (W.D. Wash. Mar. 29, 2012), *aff'd sub nom. Nixon v. Cath. Health Initiatives*, 599 F. App'x 269 (9th Cir. 2015) (granting summary judgment where one instance of conduct where the defendant intentionally touched the plaintiff's buttocks did "not rise to the level of 'severe or pervasive' so that a reasonable person would find that the conduct interfered with work performance."); *Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 F. App'x 181, 183 (9th Cir. 2010) (holding similarly where coworkers called the plaintiff a slur on two occasions and stating "[t]here is no triable issue as to whether the conduct in this case was frequent; it was not.  Nor is this a case where a racial slur was used in conjunction with a physical threat or symbol of racial violence."). A plaintiff must present more evidence than offered here to avoid summary judgment on the claim.  For example, in *Reynaga*, the court reversed the district court's grant of summary judgment where a coworker's use of slurs against Black, Arab, and Native American people and repeated comments about closing "the borders to keep motherf***ers like you from coming up here" and how "[m]inorities are taking over the country" to the Mexican plaintiff created a genuine issue of material fact regarding the severity and pervasiveness of conduct.  847 F.3d at 687–88.

## IV.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (Dkt. # 20).

ORDER RE: MOTION FOR SUMMARY JUDGMENT - 13

Dated this 6th day of May, 2022.

                                                    John H. Chun
                                                  United States District Judge